UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RYAN T. CARLETON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:23-cv-00253-JAW |
| | ) | |
| PISCATAQUIS COUNTY JAIL, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW
OF PLAINTIFF'S COMPLAINT**

Plaintiff filed a complaint and an application to proceed without prepayment of fees, which application the Court granted.  (Complaint, ECF No. 1; Application, ECF No. 2; Order, ECF No. 4.)  In accordance with the statute governing matters in which a plaintiff proceeds without prepayment of fees, a preliminary review of Plaintiff's complaint is appropriate.  28 U.S.C. § 1915(e)(2).  Additionally, Plaintiff's complaint is subject to screening "before docketing, if feasible or . . . as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

Following a review of Plaintiff's complaint, I recommend the Court dismiss the claims alleged against all but two defendants.

## Factual Allegations[1]

In July 2021, Plaintiff sat outside his cell with his hands raised because he wished to inquire about items he believed had been removed from his cell.  According to Plaintiff, Defendant Wintle drew a taser and ordered him to return to his cell.  Plaintiff asserts he rose to his feet, took two steps toward his cell, and was tased without any other warning or command.

In August 2021, at the Maine Correctional Center, Plaintiff was in an "agitated" state of mind while in segregation following what he perceived to be unjust punishment for protesting the prior conflict.  Plaintiff alleges that three unknown officers pulled a garment through a tray slot and because Plaintiff's hand was wrapped in the other end of the garment, Plaintiff suffered an injury to the hand.  Plaintiff also alleges he was poked with a broom handle through the tray slot.  Several days later, medical providers took an x-ray of his hand.  A radiologist later concluded that Plaintiff did not have a new broken bone but was instead suffering from an exacerbation of a prior broken bone in the hand.  Plaintiff has been unable to obtain prior imaging results that he contends would refute the radiologist's conclusion.

After the x-rays were taken, Plaintiff was transported to the Maine State Prison.  Plaintiff maintains that Corrections Officers Sproul and Therian threw him onto a cement floor.  Plaintiff alleges he experienced some swelling as a result.

---

[1] The facts are derived from Plaintiff's complaint.

2

In June 2022, Plaintiff was taken to the Maine State Prison infirmary for a contraband watch for allegedly swallowing a foreign object. Plaintiff asserts that he was placed in a glass-walled cell wearing only boxer shorts and instructed to always keep his hands visible to an observer. Plaintiff alleges that when he stopped complying with the command to keep his hands visible, Plaintiff was pepper sprayed three times over two hours. A nurse later wiped his face and offered for him to be decontaminated, but, according to Plaintiff, Sergeant Millard refused to allow Plaintiff to be washed properly. Plaintiff felt burning sensations from the chemicals for several days until he was allowed to shower. When he was returned to his cell, Plaintiff could not locate a petition that he had circulated among other prisoners. Plaintiff asserts that the contraband watch was ordered as unlawful punishment for circulating the petition.

Plaintiff alleges that in July 2022, without prior notice, he was placed in disciplinary segregation. He had limited access to the law library and could only make one telephone call per week to his lawyer. Plaintiff also maintains that he is innocent of the two crimes of conviction for which he is serving a sentence (theft by unauthorized taking and assault against an officer) and was wrongfully prosecuted by the District Attorney.

## LEGAL STANDARD

Title 28 U.S.C. § 1915 is designed to ensure meaningful access to the federal courts for individuals unable to pay the cost of bringing an action. When a party is proceeding pursuant to the statute, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915]

are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In addition to the review contemplated by § 1915, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

## DISCUSSION

**A.    Excessive Force**

When a plaintiff alleges that prison officials "us[ed] excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). A court "must ask both if the officials acted with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 8 (quotations marks and modifications omitted).  "The factors that are relevant to that ultimate determination include the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials, the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response." *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019) (quotation marks omitted).

Several of the corrections officers' alleged actions, even if unpleasant and unwarranted, do not rise to the level of a constitutional violation.  Without more facts regarding the circumstances in which the conduct occurred, the allegations would not permit a reasonable factfinder to conclude the alleged conduct of Officers Sproul and Therian—throwing or placing Plaintiff in a cell too forcefully causing some swelling—and the alleged conduct of an unknown officer or officers who poked Plaintiff with a broom, was "harmful enough" to satisfy the objective component of an Eighth Amendment claim.

The alleged harm to Plaintiff's caused by three officers pulling on the garment in which the hand was wrapped could possibly satisfy the objective prong of the Eighth Amendment inquiry.  However, because Plaintiff has not alleged any facts regarding the circumstances that existed at the time the force was used, including what precipitated the use of force, Plaintiff has not alleged facts that would support a finding that the three unknown officers acted with the subjective intent to inflict unnecessary harm.

Plaintiff's allegations regarding Officer Wintle's use of a taser are sufficient to support a claim at this stage of the proceedings.  The force of and pain caused by a taser are significant.  Furthermore, a factfinder could reasonably infer from Plaintiff's allegations that he complied with the officer's command and that the officer did not use the taser in "a good-faith effort to maintain or restore" order in the correctional environment.  *Hudson*, 503 U.S. at 6–7.  Plaintiff has alleged a plausible claim against Officer Wintle.

## B.   Conditions of Confinement

The Eighth Amendment prohibition on cruel and usual punishments governs prisoners' treatment after conviction, and the Due Process Clause of the Fourteenth Amendment impose similar obligations while prisoners are in pre-trial custody.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243 (1983).  "Prison officials have a duty to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."  *Giroux v. Somerset Cnty.*, 178 F.3d 28, 31 (1st Cir. 1999) (citations and quotation marks omitted).  To establish

constitutional liability, a plaintiff must satisfy an objective standard by showing he or she was "incarcerated under conditions posing a substantial risk of serious harm," and a plaintiff must satisfy a subjective standard by showing that the defendant "acted, or failed to act, with 'deliberate indifference to inmate health or safety.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834).

Plaintiff's conditions of confinement claim against "Maine State Prison Corrections Officers" can be construed to include Sergeant Millard, who allegedly caused prolonged pain by refusing Plaintiff's request to wash pepper spray off his body.  Courts have found deliberate indifference when guards refused to permit proper decontamination after the application of chemical agents like pepper spray.  *McNeeley v. Wilson*, 649 F. App'x 717, 722 (11th Cir. 2016); *see also*, *Staples v. Gerry*, 923 F.3d 7, 18 (1st Cir. 2019) (finding no Eighth Amendment claim in part because the prisoner "was promptly offered a shower and medical attention" following the pepper spray).  Plaintiff has therefore stated a plausible claim of entitlement to relief against Sergeant Millard.[2]

## C.     Wrongful Prosecution and Conviction

The United States Supreme Court has made clear that prosecutors have wide discretion when deciding whether to initiate a prosecution.

> In our criminal justice system, the Government retains "broad discretion" as to whom to prosecute.  So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.  This broad discretion rests

---

[2] Because the incident allegedly occurred at the Maine State Prison, Sergeant Millard would be among the "Maine State Prison Corrections Officers" listed as defendants in Plaintiff's complaint. (Complaint at 4.)

largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.

*Wayte v. United States*, 470 U.S. 598, 607 (1985) (quotation marks and citations omitted); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"). The broad discretion exercised by prosecutors is subject only to a prohibition against "selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979) (quotation marks omitted).

A prosecutor is entitled to immunity against civil liability for the decision whether to initiate a prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§] 1983."); *Harrington v. Almy,* 977 F.2d 37, 40 (1st Cir. 1992) ("[T]he interest that prosecutorial immunity is designed to protect—independence in the charging decision—is implicated whether the decision is to initiate a prosecution or decline to do so.").

Finally, the Supreme Court has explained:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that

relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

Plaintiff has not plausibly alleged circumstances that would overcome prosecutorial immunity or establish that the District Attorney's decision to prosecute Plaintiff was not within the broad discretion the law provides.  In addition, because Plaintiff has not alleged a prior reversal of his convictions, dismissal would be appropriate because "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.  This Court has previously considered and rejected other claims asserted by Plaintiff for similar reasons.  *See Carleton v. Almy*, 1:23-cv-00233-JAW.

**D.    Medical Malpractice**

Plaintiff alleges that the radiologist who conducted or read the x-rays of his hand committed malpractice.  Because state law and not federal law provides the cause of action for the claim, and because it appears that Plaintiff and one or more of the defendants are domiciled in the same state, Maine, subject matter jurisdiction depends on the Court's exercise of its supplemental jurisdiction.  "Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established—in certain classes of cases— that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Title 28 U.S.C. § 1367 governs the Court's exercise of its supplemental jurisdiction:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that

> are so related to claims in the action within such original jurisdiction that
> they form part of the same case or controversy under Article III of the United
> States Constitution.  Such supplemental jurisdiction shall include claims that
> involve the joinder or intervention of additional parties.

*Id.*  "State and federal claims are part of the same case or controversy for the purposes of

section 1367(a) if they derive from a common nucleus of operative fact or are such that

they would ordinarily be expected to be tried in one judicial proceeding." *Allstate Interiors

& Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 72 (1st Cir. 2013) (internal

quotation marks and modifications omitted).

"The district courts may decline to exercise supplemental jurisdiction" over a state

law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim
> substantially predominates over the claim or claims over which the district
> court has original jurisdiction, (3) the district court has dismissed all claims
> over which it has original jurisdiction, or (4) in exceptional circumstances,
> there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "No categorical rule governs the analysis; a court must weigh

concerns of comity, judicial economy, convenience, and fairness." *Redondo Const. Corp.

v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011).

The only medical provider Plaintiff named as a defendant was the unidentified

radiologist at the Maine Correctional Center.  Plaintiff evidently disagrees with the

radiologist's conclusions regarding the cause or extent of his hand injury in August 2021.

The factual questions regarding the hand injury would not be impacted by favorable or

unfavorable resolution of any factual question underlying the separate taser incident in July

2021 and the pepper spray decontamination incident in June 2022.  An exercise of

supplemental jurisdiction over the malpractice claim, therefore, is not appropriate because the treatment of the hand injury did not arise out of the same nucleus of operative facts as any surviving federal claim. *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims").

Even if there was supplemental jurisdiction, dismissal would still be appropriate because there is no basis to conclude Plaintiff complied with the prerequisites for a medical malpractice claim under Maine law. Under the Maine Health Security Act (MHSA), "a plaintiff seeking to bring a medical malpractice claim must first notify the defendant of the claim, file the notice in court, and present the claim to a prelitigation screening panel." *Stewart v. Mason*, No. 1:21-cv-00321, 2022 WL 1997213, 2022 1997213, at *2 (D. Me. June 6, 2022) (citing *D.S. v. Spurwink Servs., Inc*., 2013 ME 31, ¶ 18, 65 A.3d 1196, 1200); *see also* 24 M.R.S. § 2903. The MHSA applies to cases where the health practitioner is providing care to a person who is incarcerated. *See*, *e.g*., *Demmons v. Tritch*, 484 F. Supp. 2d 177, 179 (D. Me. 2007). When a medical malpractice claim is brought prior to satisfying the prelitigation screening prerequisite, it is proper for the court to dismiss the state action without prejudice. *See*, *e.g.*, *Hill v. Kwan*, 2009 ME 4 ¶¶ 5–6, 962 A.2d 963, 965–66.

To the extent Plaintiff intended to assert a medical care claim under the Eighth Amendment, rather than a negligence claim under state law, Plaintiff's allegations do not support such a claim. Jail officials have the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of

serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 –106 (1976)).   To establish constitutional liability, Plaintiff must demonstrate both that he was "incarcerated under conditions posing a substantial risk of serious harm," and that Defendants "acted, or failed to act, with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834).   In other words, Plaintiff must satisfy both an objective standard (substantial risk of serious harm) and a subjective standard (deliberate indifference) to prove a constitutional claim of deliberate indifference.   *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc).

The objective standard evaluates the seriousness of the risk of harm to health.   There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).   A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize a need for medical intervention.   *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)).   The subjective standard concerns the culpability of the defendant.   A plaintiff must present evidence that the defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).   Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st

Cir. 1993)).  The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response."  *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

Plaintiff's assertion that he suffered an undiagnosed or misdiagnosed broken hand could conceivably satisfy the objective standard.  However, "[a] finding of deliberate indifference requires more than a showing of negligence."  *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  An unsupported assertion that the radiologist committed malpractice does not satisfy the subjective standard.  *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987) ("Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment" the Eighth Amendment does not allow courts to "second guess the doctors").  Plaintiff has not alleged any facts that would support a finding that the radiologist had the requisite state of mind necessary to satisfy the subjective prong of the deliberate indifference standard.

## E.    Municipal Liability

Plaintiff has also joined as defendants a county jail and three state agencies or institutions.  The Court can reasonably construe Plaintiff's allegations against the Piscataquis County Jail as attempting to assert a claim against Piscataquis County.  *George v. York Cnty. Jail*, No. 2:19-cv-00569-GZS, 2020 WL 291835, at *1 n.1 (D. Me. Jan. 21, 2020), *R&R adopted,* 2020 WL 591305 (D. Me. Feb. 6, 2020).

A local governmental entity, however, is not automatically liable for a constitutional deprivation that arises from the conduct of that entity's employees.  *See Rodríguez-García v. Miranda-Marín*, 610 F.3d 756, 769 (1st Cir. 2010); *Monell v. Dep't of Soc. Servs. of City*

*of New York*, 436 U.S. 658, 694 (1978) (holding "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents").  Instead, Plaintiff must demonstrate that the county itself is responsible for the constitutional deprivation, and "liability attaches . . . 'only if the violation occurs pursuant to an official policy or custom.'"  *Rodriguez-Garcia*, 610 F.3d at 769 (quoting *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008)); *see Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  Plaintiff has not asserted any facts that would support a plausible inference that the conduct he alleges resulted from an official Piscataquis County policy or custom.

    As to Plaintiff's claims against the state agencies or institutions, subject to limited exceptions not applicable in this case, under the doctrine of sovereign immunity exemplified by the Eleventh Amendment, the State of Maine may not be sued by citizens in federal court, regardless of the form of relief requested.  *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 n. 6 (1st Cir. 2009).  To the extent Plaintiff asserts his claim against the Maine Department of Corrections, the Maine Correctional Center, or the Maine State Prison, he is requesting relief against the State of Maine that is barred by its sovereign immunity.  Additionally, while a federal district court would have jurisdiction under the Civil Rights Act over claims against persons exercising state authority, § 1983 does not authorize claims against the state or its agencies.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64 (1989); *see also Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 124 (1st

Cir.2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity.").  Accordingly, Plaintiff cannot proceed on his claim against the Maine Department of Corrections, the Maine Correctional Center, or the Maine State Prison.

## CONCLUSION

Based on the foregoing analysis, after a review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, I recommend the Court dismiss all the potential claims alleged except for an excessive force claim against Officer Wintle and a deliberate indifference claim against Sergeant Millard.[3]

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of August, 2023.

---

[3] To the extent that Plaintiff intended to assert any other claims, the allegations "are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," and the claims are therefore properly dismissed.  *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).  For example, Plaintiff's assertion that he was placed on the medical watch as punishment for creating a petition among the prisoners could be construed as an attempt to raise a First Amendment retaliation claim, but because Plaintiff did not allege any other pertinent facts such as the person responsible for the medical watch, the contents of the petition, or the reason one might oppose the petition, the factual allegations are too sparse to support an inference of retaliatory motive.